**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PAUL CURTIS PEMBERTON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-10-966-D |
| | ) | |
| JUSTIN JONES; JAMES RUDEK; | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| CORRECTIONS; STATE OF OKLAHOMA; | ) | |
| GREER COUNTY; OKLAHOMA STATE | ) | |
| REFORMATORY; DEBBIE L. MORTON; | ) | |
| WALTER N. DINWIDDIE; ANITA | ) | |
| TRAMMELL; DIANNA PRICE; SALLY | ) | |
| WIGGINS; CARL BEAR; PAULA BETHEA; | ) | |
| JO BETH HARVEY-HAYNES; CHERYL | ) | |
| WALL; OUIDA NICKELL; DAVID | ) | |
| WORTHAM; ATOKA COUNTY; and | ) | |
| MACK ALFORD CORRECTIONAL | ) | |
| CENTER, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Paul Curtis Pemberton, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Several motions are pending: Plaintiff's Motion for Preliminary Injunction [Doc. #7]; Plaintiff's Motion for Appointment of Counsel [Doc. #16]; Plaintiff's Motion for Inclusion of Evidence [Doc. #19]; another motion entitled Motion for Inclusion of Evidence [Doc. #20]; and a motion requesting that the previous motions be set for hearing [Doc. #21]. Additionally, Plaintiff has filed two motions to compel [Doc. ##25, 27] seeking an order compelling the District Court for Greer County to produce all documents filed in a case pending in that court and an order compelling the Oklahoma Court of Criminal Appeals to

produce all documents filed in a case pending before that court. Plaintiff has filed a motion requesting a hearing on his motions to compel. [Doc. #26]. Finally, Plaintiff has filed an Application for Grand Jury Investigation [Doc. #28][1]

An initial review of the Amended Complaint [Doc. ##17, 17-1] has been conducted pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915 (pertaining to *in forma pauperis* proceedings). It is recommended that the Amended Complaint be dismissed *sua sponte* for failure to state a claim upon which relief may be granted. It is further recommended that Plaintiff's pending motions be denied. Finally, it is recommended that this dismissal count as a "prior occasion" or strike pursuant to 28 U.S.C. § 1915(g).

## I.     Background

In his Amended Complaint, Plaintiff chronicles a number of incidents which allegedly occurred at two different correctional facilities: Mack Alford Correctional Center (MACC) and the Oklahoma State Reformatory (OSR). In addition to individual prison officials, Plaintiff has also named as defendants Justin Jones, Director of the Oklahoma Department of Corrections (ODOC); the State of Oklahoma; the ODOC; and the two correctional facilities themselves. Plaintiff has sued the individual defendants in both their official and individual capacities.

---

[1]Additionally, Plaintiff filed an appeal [Doc. #18] and objections [Doc. #24] to this Court's Order [Doc. #13] denying Plaintiff's previous motion for contempt [Doc. #12]. Plaintiff also filed a motion to reconsider [Doc. #23]. The appeal, objections and motion to reconsider have been resolved by the referring district judge. *See* Orders [Doc. ##22, 29].

Further, Plaintiff has filed a Motion for Recusal [Doc. #30] and Motion for Hearing [Doc. #31] which have been addressed by separate order [Doc. #32].

In the section of the Amended Complaint subtitled "Nature of the Case," Plaintiff outlines the incidents and conditions which he considers to be constitutional violations:

> The plaintiff brings this Complaint for vindication of his constitutional rights. He has had his legal mail opened outside his presence. He has been transferred in retaliation to prevent this suit. He has been housed and forced to drink contaminated drinking water and developed a large tumor in his throat which was surgically removed. He has been restricted from filing grievances including this suit. He has been housed with violent gang members in an attempt to cause serious bodily harm to him. He has been thrown out of self help programs for no disciplinary reason which is retaliation. He has been subjected to inhumane conditions such as freezing cold temperatures and feces in the toilet for days. He has never been provided a grievance procedure where corrections staff are not in default. He has been denied forms to use the grievance procedure. He has been denied high top tennis shoes for correction of his weak ankles. He has been obstructed from filing this suit and others by not being provided copies of legal work at his expense and withheld from a law library. He has been restricted to mailing legal mail to one day per week if he goes to the law library. He has had his legal mail going out searched having it read by staff and the remaining are listed within and has left no choice but to file this suit in order to vindicate his rights.

Amended Complaint [Doc. #17-1] at 2.

## II.  **Plaintiff's Claims and Requested Relief**

Plaintiff has included eight numbered "counts" in his Amended Complaint. Counts 1, 5, 6, 7 and 8, however, do not contain factual allegations of constitutional violations. Counts 2, 3 and 4 list numerous alleged constitutional violations. Many of Plaintiff's claims are sketchy and repetitive.

### A.    Counts One, Five, Six, Seven and Eight

In Count 1, Plaintiff states generally that his rights under both the United States Constitution and the Oklahoma Constitution have been violated.  He claims entitlement to injunctive relief.  *See* Amended Complaint at 60-61.  In Count 5, Plaintiff states that ODOC officials are continuing the unconstitutional practices which originally led to the consent decree in *Battle v. Anderson*, 564 F.2d 388 (10th Cir. 1977).  *See* Amended Complaint at 70. In Count 6, Plaintiff contends that he should not be required to exhaust administrative remedies because his access to the grievance procedure has been restricted and because he fears retaliation.  *See* Amended Complaint at 71-75.  In Count 7, Plaintiff cites various cases which, he contends, support his allegation that his constitutional rights have been violated. *See* Amended Complaint at 76-80.   In Count 8, Plaintiff recites the constitutional amendments upon which the allegations in the remaining counts are based.  *See* Amended Complaint at 80-81.

### B.    Count Two

In Count 2, Plaintiff lists these unrelated alleged constitutional violations:

- Defendants' disciplinary policies and practices have "failed to afford Plaintiff the procedural safeguards which are minimally necessary to insure fundamental fairness causing damage to plaintiffs [sic] actions in every area."

- Both MACC and OSR have inadequate medical care delivery systems.

- Officials at both institutions have unreasonably restricted his general and legal mail and have illegally searched his legal mail.

- Officials at both institutions have denied him access to the courts by restricting his time in the law library.

- Defendants have retaliated against him by transferring him from MACC to OSR, by housing him in violent situations, by removing him from programs and by restricting his right to file grievances.

- Defendants forced him to drink contaminated water at MACC for two years leading to a tumor in his throat.

- Plaintiff was forced to live in his cell with human feces present in the stool for numerous days when one of the facilities was under a lockdown.

- The ODOC grievance procedure is unconstitutional.

- Defendants housed Plaintiff with known enemies in an attempt to cause him harm and forced him to live with an incompatible cell partner.

*See* Amended Complaint at 61-64.

## C.    <u>Count Three</u>

In Count 3, Plaintiff lists the following alleged constitutional violations:

- Defendant Justin Jones has failed to adequately supervise all employees named as defendants.

- Defendant Debbie L. Morton, the Director's Designee for considering grievance appeals at the agency level, has failed to provide Plaintiff a fair hearing, failed to follow ODOC policy, and retaliated against Plaintiff by having him transferred and by restricting his ability to file grievances.

- Defendant Walter Dinwiddie and Defendant Anita Trammel violated ODOC policy in reviewing Plaintiff's grievances.

- Defendant Dianna Price and Defendant Sally Wiggins both performed illegal searches of Plaintiff's legal mail.

- Tommy Sharp, Captain Layton, Lori Delay, Wontova Goodson, Nancy Davis, Tracie Brials, Sgt. Ingram, Sgt. Arpellas and Shawn Hedgcock, all employees at MACC (none of whom are named as Defendants in this action), were "involved in the retaliatory transfer of Plaintiff."

Amended Complaint at 65-66.

**D.** **Count Four**

Plaintiff lists the following alleged constitutional violations in Count 4:

- Defendant Jones has failed to adequately supervise "all listed employees."

- Defendant Morton failed to provide Plaintiff a fair hearing when she reviewed his grievance appeals, failed to answer grievance appeals, failed to follow ODOC policy, violated his rights under both the Oklahoma Constitution and the United States Constitution, and retaliated against him by transferring him.

- Defendant James Rudek, Warden of OSR, violated ODOC policy when he reviewed Plaintiff's grievances and failed to supervise Defendant Carl Bear.

- Defendant Bear violated ODOC operations procedures as well as the Oklahoma Constitution and the United States Constitution by answering requests to staff and grievances and assuming the job duties of the Warden of OSR without being qualified and trained.

- Defendant Paula Bethea, law library supervisor at OSR, restricted legal mail going out of the facility to only one day per week, restricted Plaintiff's access to the law library, failed to make copies, and destroyed documents, all in violation of ODOC policy, the Oklahoma Constitution and the United States Constitution.

- Defendant  Jo Beth Harvey-Haynes, mail room supervisor at OSR, failed to deliver mail to Plaintiff and refused to mail both his regular mail and legal mail on numerous occasions, thereby violating Plaintiff's right to free speech.

- Defendant Cheryl Wall, case worker at OSR, intentionally housed Plaintiff with incompatible cell partners, unlawfully deducted money from Plaintiff's account, and violated ODOC policies as well as the Oklahoma Constitution and the United States Constitution.

- Defendant Ouida Nickell deducted money from Plaintiff's account and refused to release money from Plaintiff's savings toward this action in the amount of $150.00 in violation of ODOC policy as well as the Oklahoma Constitution and the United States Constitution.

- Defendant David Wortham, Director of Faith and Character at OSR, violated Plaintiff's exercise of free speech by removing Plaintiff from the Faith and

> Character Program (a program which, according to Plaintiff, violates separation of church and state), by reading Plaintiff's letters to his mother, and by housing Plaintiff with known gang members.

*See* Amended Complaint at 66-69.

Plaintiff seeks injunctive relief in the nature of an order from this Court requiring prison officials to comply with ODOC policies and laws and requiring prison officials to "stop violating Plaintiff's rights[.]" He also seeks monetary damages. *See* Amended Complaint at 82-84.

### III.   **Grounds for *Sua Sponte* Dismissal**

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), dismissal of a complaint filed *in forma pauperis* is proper for failure to state a claim upon which relief may be granted. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). *See also* 28 U.S.C. § 1915A(b)(1). As with a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

Because Plaintiff is proceeding *pro se*, his complaint must be construed liberally. *See id*. at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young*, 554 F.3d at 1256 (quotations and citation omitted).

# IV.    Analysis of Claims

## A.    Defendants Entitled to Eleventh Amendment Sovereign Immunity

"To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  Neither a state, a state agency, nor an official of the State acting in his or her official capacity, is a "person" for purposes of § 1983. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 64, 71 (1989).  *See also Branson School District RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) (when suit is brought against a state official in his official capacity, the real party in interest is the state).  Thus, Eleventh Amendment sovereign immunity precludes suits against states, state agencies and state officials sued in their official capacities.

Unlike other jurisdictional issues, a State may waive the defense of sovereign immunity.  The State of Oklahoma has not, however, waived its sovereign immunity defense against § 1983 claims brought in federal district court cases.  *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994).  Moreover, a court may, in its discretion, raise the issue of Eleventh Amendment immunity *sua sponte*.  *See Nelson v. Geringer*, 295 F.3d 1082, 1098 n. 16 (10th Cir. 2002) ("[T]he [Supreme] Court has stated that judicial consideration of Eleventh Amendment issues *sua sponte* is discretionary, not mandatory.").

Given the procedural posture of this case, this Court should exercise its discretion and address the issue of Eleventh Amendment immunity *sua sponte*.  Defendants Oklahoma

Department of Corrections and the State of Oklahoma are immune from Plaintiff's suit, and all claims against these Defendants should be dismissed with prejudice.[2]  Claims for monetary damages against all individual defendants sued in their official capacities should also be dismissed on the basis of sovereign immunity.[3]  It is therefore recommended that all of Plaintiff's claims against the Department of Corrections and the State of Oklahoma, as well as the official capacity claims for monetary damages asserted against the individual defendants, be dismissed with prejudice based on Eleventh Amendment sovereign immunity grounds.

## B.    Claims Against MACC and OSR

All claims against the two detention facilities named as defendants in this action should also be dismissed with prejudice.  MACC and OSR are merely the names of detention facilities.  They lack a separate legal identity from the state and are not subject to suit.  *See Aston v. Cunningham*, No. 99-4156, 2000 WL 796086 at *4 n. 3 (10th Cir. Jun. 21, 2000) ("a detention facility is not a person or legally created entity capable of being sued")

---

[2]Generally, dismissals of claims for failure to state a claim upon which relief may be granted are without prejudice. Dismissal of claims with prejudice is appropriate where allowing the plaintiff the opportunity to amend his complaint would be futile.  *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

[3]"[A] suit against a state official in his or her official capacity seeking only prospective injunctive relief is not considered a suit against the state for Eleventh Amendment purposes." *Branson School District RE-82*, 161 F.3d at 631-632 (*citing Will v. Michigan Dep't of State Police*, 491U.S. 58, 71 n. 10 (1989)).  To the extent that Plaintiff seeks prospective injunctive relief, his claims against the individual defendants in their official capacities are not barred by Eleventh Amendment sovereign immunity.  Such claims are, however, subject to dismissal for failure to state a claim upon which relief may be granted.

(unpublished op.).[4] Because these facilities are not "persons" and have no legal identity

separate from the State of Oklahoma, the Court should dismiss all claims against MACC and

OSR with prejudice.

### C. Claims against Defendant Jones

In his Amended Complaint, Plaintiff identifies Defendant Jones as the Director of

ODOC and states that he "is the supervisor over all employees of [ODOC]." Amended

---

[4]The majority of courts which have considered the issue have concluded that a detention facility lacks the capacity to be sued. *See Guidry v. Jefferson County Detention Center*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) ("There is no doubt that the 'Jefferson County Detention Center' is not a legal entity capable of being sued."); *Marsden v. Federal Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) ("As for the Orange County Jail, a jail is not an entity that is amenable to suit."); *Buckley v. Dallas County*, Case No. CIV.A.3:97- CV-1649-G, 1999 WL 222380 at *2 (N.D. Tex. Apr. 13, 1999) ("this court has repeatedly held that the [Dallas County Jail] is not a separate legal entity subject to suit"); *Avant v. Rice*, Case Nos. 91-748-CIV-T- 17A, *et al.*, 1992 WL 359633 at *6 (M.D. Fla. Nov. 19, 1992)("The jail is not an actionable legal entity because it does not enjoy a separate legal existence independent of the County or the Sheriff's Office."); *Lumpp v. McHenry County*, Case No. 93 C 20185, 1994 WL 149715 at *3 (N.D. Ill. Apr. 11, 1994) (holding that the McHenry County Correctional Center is not a proper party because it "does not under Illinois law possess independent existence subjecting it to suit"); *see also Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Cook County Jail is not a 'person' [for purposes of Section 1983] – it is not a legal entity to begin with."); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989) (alternative holding) ("[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"); *Whitley v. Westchester County Correctional Facility*, Case No. 97 CIV. 0420(SS), 1997 WL 659100 at *7 (S.D. N.Y. Oct. 22, 1997) ("A prison facility, such as the Westchester County Correctional Facility or Jail, is not a person within the meaning of § 1983."); *Agnew v. St. Joseph County Jail*, Case No. 3:95-CV-608RP, 1996 WL 534928 at *1 (N.D. Ind. Aug. 14, 1996)("The 'St. Joe County Jail' is not a recognized legal entity under Indiana law and it is not a 'person' subject to suit under § 1983."); *Sponsler v. Berks County Prison*, Case No. CIV. A. 95-1136, 1995 WL 92370 at *1 (E.D. Pa. Feb. 28, 1995) ("A prison is not a 'person' subject to suit under the civil rights laws."). This Court has also subscribed to the opinion of the majority on this issue. *See Carter v. Oklahoma County Jail*, Case No. CIV-95-171-C, Report and Recommendation at p. 2 (unpublished op.) (Argo, J.) (W.D. Okla. Feb. 28, 1995); *Order*, (W.D. Okla. Mar. 28, 1995) (unpublished op.) (Cauthron, J.); *accord Jarrell v. Cimarron Correctional Facility*, Case No. CIV-98-1401, Order (W.D. Okla. Feb. 23, 2000) (unpublished op.) (Alley, J.) (ordering dismissal of Cimarron Correctional Facility for lack of legal capacity to be sued).

Complaint [Doc. #17-1] at 1. In Count 2 and Count 3, Plaintiff makes conclusory allegations that Defendant Jones has failed to adequately supervise ODOC employees. These allegations of supervisory liability are not supported by enough facts to state a plausible claim upon which relief may be granted.

The Supreme Court recently outlined pleading requirements necessary to state a claim in a civil rights action against a government official based on supervisory liability:

> Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1948 (2009).[5] Tenth Circuit law is consistent with *Iqbal*. It has long been the law in this circuit that § 1983 does not allow a plaintiff to hold an individual government official liable "'under a theory of respondeat superior.'" *Dodds v. Richardson*, 614 F.3d 1185, 1194-1196 (10th Cir. 2010) (*quoting Gagan v. Norton*, 35 F.3d 1473, 1476 n. 4 (10th Cir. 1994)). *See also Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) ("[A] supervisory relationship alone is insufficient for liability under § 1983."). The Tenth Circuit has held that "[s]upervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). A plaintiff must establish "'a deliberate, intentional act by the supervisor to violate

---

[5]In *Iqbal*, the Plaintiff's claims were based on the actions of federal officials. The claims were, therefore, brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Court noted that the same principles apply to civil rights actions brought pursuant to § 1983.

constitutional rights.'" *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (*quoting Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992)).

Plaintiff has alleged no facts that demonstrate an affirmative link between any alleged constitutional deprivation and Defendant Jones' personal participation in the alleged deprivation. Plaintiff's conclusory allegation that Defendant Jones has failed to supervise ODOC employees is insufficient. All claims against Defendant Jones should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### D. Claims against Atoka County and Greer County

Plaintiff has named Atoka County and Greer County as defendants in this case based only on the fact that MACC is located in Atoka County and OSR is located in Greer County. Amended Complaint at 11-12. Under Oklahoma law, however, a county may be sued only in the name of the "Board of County Commissioners of the County of _____." *See* Okla. Stat. tit. 19, §4 (2001). *See also Green Construction Co. v. Oklahoma County*, 50 P.2d 625, 627 (Okla. 1935) (finding requirements of predecessor statute mandatory).

Even if this pleading defect were remedied, however, Plaintiff's allegations do not state a claim upon which relief may be granted against either Atoka County or Greer County. In *Monell v. Department of Social Services of the City of New York*, 436 U. S. 658, 691 (1978), the Supreme Court held that a municipality or other local governmental unit cannot be held liable under 42 U.S.C. § 1983 for the unauthorized acts of its agents. A municipality can incur liability, but only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* The policy must be the "moving force" behind the

constitutional violation. *See, e.g., Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215 (10th Cir. 2003) (*citing Monnell* at 691); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986). A municipality's conduct constitutes the "moving force" behind the injury alleged when that conduct is deliberate and a causal link exists between the municipal action and the deprivation of federal rights. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff has alleged no facts that lead to a plausible conclusion that either Atoka County or Greer County has established policies that were the moving forces behind the alleged constitutional violations, nor has he pled sufficient facts to link any of the individual defendants to either county. Plaintiff challenges only ODOC procedures, the actions of ODOC employees, or the conditions of Plaintiff's confinement while in ODOC custody. The claims against Atoka County and Greer County should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

E.      **Challenge to Prison Disciplinary Procedure**

In Count 2, Plaintiff's allegations include this general statement regarding the prison disciplinary procedure:

> Viewing the disciplinary process as a whole, to include both policies and practices, defendants have failed to afford Plaintiff the procedural safeguards which are minimally necessary to insure fundamental fairness causing damage to plaintiffs [sic] actions in every area.

Amended Complaint at 61. Although Plaintiff challenges the ODOC disciplinary process in place at MACC and OSR, he has not alleged any facts to support a plausible inference that he has been harmed by the application of the disciplinary procedures or that the minimal due process protections applicable to a prison disciplinary proceeding were violated.[6] Moreover, challenges to disciplinary actions are properly brought pursuant to 28 U.S.C. § 2441. Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and this claim should be dismissed without prejudice.

### F.    Challenges to Prison Grievance Procedure

More than thirty pages of Plaintiff's Amended Complaint are devoted to describing various requests to staff members and grievances that Plaintiff allegedly filed both at MACC and OSR. Claims against various defendants based on application of the allegedly unconstitutional grievance procedure include allegations that certain defendants have failed to afford Plaintiff a fair hearing, failed to answer grievances and restricted Plaintiff's ability to file grievances.[7] Plaintiff identifies Defendant Debbie L. Morton as the authority designated by Defendant Jones to processes inmate grievance appeals at the agency level

---

[6] To satisfy due process in the context of a prison disciplinary proceeding, an inmate must receive: (1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). *See also Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

[7]Plaintiff's own description of unanswered grievances demonstrates that, for the most part, unanswered grievances were returned to Plaintiff because the form submitted did not comply with ODOC policy or because the grievance had been previously submitted and addressed. *See* e.g. Amended Complaint at 22-24.

Amended Complaint at 2.  In Count 3 and Count 4, Plaintiff contends Defendant Morton violated his constitutional rights by imposing a grievance restriction, by failing to give him a fair hearing and by transferring him in retaliation for filing grievances.[8]  Amended Complaint at 65.  Plaintiff states that Defendant Walter Dinwiddie, Warden of MACC, and Defendant Anita Trammel, Deputy Warden at MACC, violated ODOC policy in reviewing Plaintiff's grievances at the facility level.  In Count 4, Plaintiff claims that Defendant Rudek, Warden of OSR, refers Plaintiff's grievance appeals to Defendant Carl Bear.  Plaintiff contends that Defendant Bear is not qualified to respond to grievance appeals.  Finally, Plaintiff contends that "suspension of [his] grievance privileges" has "damaged all actions and put Plaintiff in direct harm to his safe and secure well being[.]" Amended Complaint at 63.[9]  According to Plaintiff, the grievance restrictions imposed against him left him with "no available remedy" through which he could exhaust his claims.  Amended Complaint at 75.

Prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights.  *See Murray v. Albany County Board of County Commissioners*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000)

---

[8]Plaintiff has included no facts to suggest that Defendant Morton has anything to do with housing assignments of inmates.  Therefore, Plaintiff has failed to state a claim of retaliatory transfer by Defendant Morton.

[9]Defendant Morton imposed a twelve-month grievance restriction because of Plaintiff's continued submission of grievances that did not conform to ODOC policy.  Defendant Morton informed Plaintiff that while he was subject to the grievance restriction, he must follow the procedure outlined in Section IX, OP-090124.  *See* Amended Complaint at 30-32.  Defendant Rudek imposed another grievance restriction because Plaintiff continued to file grievances that did not comport with OP-090124.  That policy describes the steps an inmate must take to file a grievance while under a grievance restriction.

(unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (*quoting Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Dept. of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). *See also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure).

Contrary to his allegation, Plaintiff has not been left with "no available remedy" through which he could exhaust the claims he has brought in this Amended Complaint. The grievance restriction does not entirely preclude access to the grievance process. An inmate must, however, follow the steps outlined in the ODOC policy. Because no constitutional right guarantees access to a prison grievance procedure, Plaintiff's due process rights have not been violated by defendants' following or failing to follow the ODOC grievance

16

procedures.  Plaintiff's allegations concerning prison grievance procedures do not state a claim upon which relief may be granted.  These claims should be dismissed with prejudice.

### G.   Removal from Voluntary Program

In Count 4, Plaintiff contends that Defendant David Wortham, identified by Plaintiff as the Director of Faith and Character at OSR, removed Plaintiff from the Faith and Character Program in retaliation for exercising his right to free speech.  Plaintiff also contends that Defendant Wortham read Plaintiff's letters to his mother and attempted to cause serious bodily harm to Plaintiff by housing him with known gang members.  Even though he complains about his removal from the Faith and Character program, Plaintiff alleges that having such a program available in a prison violates the principle of separation of church and state and "forces religion upon Plaintiff."  Plaintiff ends this claim with the conclusory statement that he has been discriminated against based on  his "beliefs and his race."  Amended Complaint at 69.

A prisoner has no constitutionally protected liberty interest in participating in a voluntary prison program.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that inmates' protected liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  Plaintiff's removal from the Faith and Character program has neither restrained his liberty in excess of his sentence, *cf. Washington v. Harper*, 494 U.S. 210, 221-22 (1990), nor

imposed "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Plaintiff's conclusory allegation that he was removed from the Faith and Character program in retaliation for his having exercised his First Amendment right to free speech is insufficient to state a plausible claim of constitutional dimension.  As Plaintiff complains that the Faith and Character Program violates the principle of separation of church and state and forces religion on him, his complaint about his removal from the program is disingenuous. Moreover, while "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech," *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996), the control of mail to and from prisoners is a necessary adjunct to penal administration.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (acknowledging that prison officials are better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world).  *See also United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir.1999) ("In the case of unprivileged incoming and outgoing mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene.").  Therefore, Plaintiff's allegation that Defendant Wortham read outgoing, non-privileged mail does not state a claim upon which relief may be granted.

Plaintiff's conclusory allegation that Defendant Wortham "attempted to cause serious bodily harm by his actions housing [Plaintiff] with known gang members who are violent and incompatible cell partners" is not supported by sufficient facts to state a plausible Eighth Amendment claim.  To state a viable claim in this context a prisoner must show the

defendant exhibited deliberate indifference to a substantial risk of serious harm; that is, the prison official is liable only if the official knew of and disregarded an excessive risk to inmate health and safety. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). In this case, Plaintiff does not allege that he suffered any harm from any inmate with whom he was housed or that he was even threatened by any inmate with whom he was housed. Having to share a cell with an "incompatible" cell mate does not state an Eighth Amendment claim.

Plaintiff's assertion that Defendant Wortham discriminated against him based on his beliefs and race are similarly devoid of sufficient factual support to state a plausible constitutional claim. The claims against Defendant Wortham should be dismissed without prejudice.

### H.     Retaliatory Conduct and Transfer

Plaintiff contends that prison officials have retaliated against him for exercising his constitutional rights. Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate claiming retaliation must, however, "allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* (quotations omitted) (emphasis in original).

In Count 2, Plaintiff alleges that unspecified defendants "have engaged in retaliatory conduct which would normally cause a person to stop attempting to vindicate his rights[.]" He states generally that these unnamed defendants have withheld mail, conducted illegal searches, taken his property, and transferred him and housed him in "violent situations."

Amended Complaint at 62. These allegations are too vague and lack sufficient factual support to state a plausible claim of retaliation.

In Count 3, Plaintiff alleges that nine ODOC employees "were involved in the retaliatory transfer of Plaintiff on 10-15-09 to this more violent prison at 'OSR' in Granite." Amended Complaint at 66. Plaintiff has not named any of these employees as defendants in this case, nor has he supported his allegations with enough facts to state a plausible claim. Plaintiff's claims based on allegedly retaliatory conduct should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## I.   Conditions of Confinement

Plaintiff contends that numerous conditions of his confinement violate his Eighth Amendment right to be free of cruel and unusual punishment.

In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court held that in a challenge to prison conditions under the Eighth Amendment courts must look to the totality of conditions to determine whether the alleged deprivations deny "the minimal civilized measure of life's necessities." *Id.* at 349.

> [T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime[.]

*Id.* at 346 (internal quotations and citations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994) (concluding that a sufficiently serious deprivation must result in the denial of "the minimal civilized measure of life's necessities" such as shelter, sanitation,

food, personal safety, medical care and clothing) (*quoting Rhodes v. Chapman*, 452 U.S. 337 at 347)).

But "a prison official violates the Eighth Amendment only when two requirements are met." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In addition to pleading a sufficiently serious deprivation, the "prison official must have a 'sufficiently culpable state of mind.' " *Farmer*, 511 U.S. at 834 (*quoting Wilson*, 501 U.S. 297). Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. The subjective requirement is one of deliberate indifference. *Wilson*, 501 U.S. at 298-303.

## 1. **Contaminated Drinking Water**

In Count 2, Plaintiff states that during the two years he was incarcerated at MACC, he was forced to drink contaminated water. Amended Complaint at 63.[10] He states that a water test conducted by the Oklahoma Department of Environmental Quality supports his contention that the water at MACC is contaminated. Amended Complaint at 26. According to Plaintiff, ODOC employees at MACC are provided with bottled water.[11] Amended Complaint at 20. Assuming the water supply at MACC is or was, in fact, contaminated,

---

[10]Plaintiff attributes the growth in his throat to the allegedly contaminated water. This conclusory statement is sheer speculation and unsupported by any facts.

[11]The fact that employees at MACC had access to bottled water does not demonstrate knowledge that the prison water supply was contaminated. Bottled water is ubiquitous in work environments.

Plaintiff has offered no evidence that prison officials at MACC knew the water supply was contaminated while Plaintiff was incarcerated there, nor has he alleged any facts suggesting that any of the defendants drew an inference that the drinking water posed a serious risk of harm to Plaintiff and disregarded that inference, as required to state an Eighth Amendment claim of deliberate indifference. *See Griffin v. Suthers*, 156 Fed. Appx. 66, 71 (10th Cir. Nov. 25, 2005) (even if defendant prison officials should have drawn inference from known facts that substantial risk of serious harm might exist in drinking water, the plaintiff offered nothing to show defendants drew such inference and disregarded it, as required for Eighth Amendment claim of deliberate indifference) (*citing Farmer*, 511 U.S. at 837) (unpublished op.). This claim should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 2. Unsanitary Conditions

In Count 2, Plaintiff states that he was "forced to live in his cell with human feces present in the stool for numerous days while under a lockdown status." Amended Complaint at 63-64. According to Plaintiff, the water at OSR was shut off, making it impossible to flush the toilet in his cell.

The Tenth Circuit Court of Appeals has considered allegations of an inmate's exposure to human waste in the context of an Eighth Amendment claim. The Tenth Circuit concluded that a plaintiff's allegation that he was exposed to "other inmates' urine and feces via the standing water and also to close confinement with the odor of his own accumulated urine" during a thirty-six hour period satisfied the "sufficiently serious" requirement of a

conditions of confinement claim. *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).

The Tenth Circuit stated:

> While there is no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment, exposure to human waste carries particular weight in the conditions calculus. Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment. Accordingly, the conditions described by [the plaintiff] meet the first prong of the *Farmer* test.

*Id.* at 974-975 (internal quotations and citations omitted). In this case, taking Plaintiff's description as true, Plaintiff was incarcerated in close confinement with the odor of his own accumulated feces. He was not, however, exposed to direct physical contact with the feces and urine of other prisoners. Nevertheless, the conditions Plaintiff describes could be considered sufficiently serious to meet the first prong of the *Farmer* test.

The second, subjective prong of the *Farmer* test requires that prison officials show "deliberate indifference" to the existence of any risk inherent in exposure to the challenged conditions. The Supreme Court has explained this requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. A prison official who is not aware of the challenged conditions "'cannot be said to have inflicted punishment' in a manner that violates the Eighth Amendment." *DeSpain*, 264 F.3d at 975 (*quoting Farmer*, 511 U.S. at 844).

In this case, Plaintiff has not alleged sufficient facts to demonstrate that any of the defendants were deliberately indifferent to the unpleasant condition in Plaintiff's cell occasioned by the lack of running water. Plaintiff has not alleged that any of the Defendants purposefully shut off the water to punish inmates. Moreover, Plaintiff admits that the facility was under a lockdown status which suggests that security issues may have been implicated. Plaintiff has alleged no facts to support a plausible claim that prison officials were deliberately indifferent to the lack of running water such that they could be held liable for inflicting cruel and unusual punishment. This claim should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 3. <u>Failure to Protect</u>

In Count 2, Plaintiff contends that he "has been intentionally housed with known enemies in an attempt to caused [sic] harm by forcing Plaintiff to live with an incompatible cell partner." Amended Complaint at 64. In Count 4, Plaintiff states that Defendant Cheryl Wall, identified as a "case worker" at OSR, intentionally housed Plaintiff with "incompatible cell partners." Amended Complaint at 68.

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners," and a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (brackets and ellipsis omitted) (*quoting Farmer* at 825, 828, 833). Inmates state a cognizable failure to protect claim, however, only when they show (1) they were incarcerated "under conditions posing a substantial risk of serious harm, the objective

component," and (2) "the prison official was deliberately indifferent to [inmates'] safety, the subjective component." *Id.* at 1271 (quotation omitted). Plaintiff's conclusory allegation that Defendant Wall and other unidentified prison officials have intentionally housed him with unidentified "known enemies" is insufficient to state a plausible Eighth Amendment claim based on prison officials' failure to protect him. Plaintiff's claim that Defendant Wall intentionally housed him with "incompatible cell partners" is likewise insufficient to state a cognizable Eighth Amendment claim. Plaintiff's failure-to-protect claims should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 4. Medical Care

In Count 2, Plaintiff claims that both MACC and OSR have failed to provide "adequate medical care." Amended Complaint at 62. Plaintiff indicates that he wanted high topped tennis shoes. He contends that he needed the shoes to support his weak ankles. Amended Complaint at 2. According to Plaintiff's Amended Complaint, he was unable to get high topped tennis shoes because there was no documentation of medical need and because none were available for sale in the canteen. He says he has a pair but they are wearing out. Amended Complaint at 44, 48. Further pertinent to his medical care claim, Plaintiff states that after his transfer to OSR, the tumor in his throat was surgically removed. Amended Complaint at 63.

The Eighth Amendment prohibits prison officials' deliberate indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary

and wanton infliction of pain' proscribed by the Eighth Amendment.") (citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* (quotations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment violation recognized only if medical needs are "serious"). Plaintiff's inability to get a new pair of high-topped tennis shoes for his allegedly weak ankles is not sufficiently serious to state a deprivation of constitutional dimension. Further, by Plaintiff's own account, the growth in his throat was surgically removed. Plaintiff has not established a factually plausible claim of deliberate indifference to his serious medical needs, and this claim should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### J.     Access to Courts and Legal Mail

In Count 2, Plaintiff states that officials at both MACC and OSR "have engaged in an ongoing pattern and practice of arbitrary and unreasonable restriction, illegal search and interruption and delay of mail both general and legal." Amended Complaint at 62. In Count 3, Plaintiff states that Defendant Dianna Price, identified as "mail room personnel" at MACC, and Defendant Sally Wiggins, identified as "mail room supervisor" at MACC, performed illegal searches of legal correspondence from McIntosh County District Court outside of Plaintiff's presence. Amended Complaint at 65. In Count 4, Plaintiff states that Defendant Paula Bethea, identified as "law library supervisor at OSR" restricted legal mail

going out to only one day per week, restricted all law library access, did not provide copies, and destroyed documents. Amended Complaint at 67. Finally, Plaintiff states that Defendant Jo Beth Harvey-Haynes, identified as mail room supervisor at OSR, failed to deliver mail to him and failed to post outgoing regular and legal mail on numerous occasions. Amended Complaint at 68. These claims implicate Plaintiff's constitutional right to access the courts.

An inmate's "'constitutional right of access to the courts is clearly established.'" *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (*quoting Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996)). To state a claim for denial of such a right, however, a prisoner "must demonstrate actual injury from interference with his access to the courts – that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, ___ F.3d ___, 2010 WL 4196034 at *10 (10th Cir. Oct. 26, 2010) (*citing Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)). The plaintiff in *Gee* alleged that defendants "engaged in confiscating, reviewing, and hindering access to his legal files, hindering his communications with a jailhouse lawyer, denying him access to a law library, and interfering with his legal mail." *Id.* The claims in *Gee* are almost identical to the claims in the instant case. Like the plaintiff in *Gee*, Plaintiff in the instant case has failed to demonstrate any injury resulting from the perceived denial of access to the courts, and these claims should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### K.    Claims Regarding Prison Trust Account

In Count 4, Plaintiff alleges that his case worker, Defendant Wall, "devised a plan to deduct money from Plaintiff's account that he does not owe," and that Defendant Ouida Nickell "did deduct money from Plaintiff's account and did refuse to release money from Plaintiff's savings toward this action[.]"[12] Amended Complaint at 68. To the extent that the claims against these two defendants are based on their having taken Plaintiff's property without due process, Plaintiff has failed to state of claim of constitutional dimensions. Random and unauthorized deprivation of a prisoner's property does not violate due process, so long as post-deprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Winters v. Board of County Commissioners*, 4 F.3d 848, 857 (10th Cir. 1993). "The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." *Winters*, 4 F.3d at 856 (citation omitted). In this case, state post-deprivation remedies exist. *See, e.g.*, Okla. Stat. tit. 12, § 1571 (replevin); Okla. Stat. tit. 51, §§ 151-171 (Governmental Tort Claims Act). Plaintiff has not, therefore, stated a claim for which relief may be granted based on the alleged deprivation of his property, and this claim should be dismissed without prejudice.

---

[12]Plaintiff is proceeding *in forma pauperis* and was initially required to pay only a partial filing fee. According to the docket sheet in this case, this Court received a partial payment of the filing fee in the amount of $44.60 on September 23, 2010, as ordered by this Court.

## V. Plaintiff's Pending Motions

### A. Motion for Appointment of Counsel

District courts are granted broad discretion with regard to the decision to request an attorney to represent an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); 28 U.S.C. § 1915(e)(1). In exercising this discretion, the Court must consider a number of factors, including: (1) the merits of the litigant's claims, (2) the nature of the factual issues involved, (3) the litigant's ability to present the claims and (4) the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995).

Having carefully considered the factors and circumstances of Plaintiff's case bearing on the need for counsel, Plaintiff's request for appointment of counsel [Doc. #16] should be denied. Plaintiff's claims are not factually or legally complex. Moreover, if this Report and Recommendation is adopted, the claims presented in Plaintiff's Amended Complaint will be dismissed. For these reasons, Plaintiff's Motion for Appointment of Counsel should be denied.

### B. Motion for Preliminary Injunction

In his motion for injunctive relief [Doc. #7], Plaintiff restates most of the claims in his Amended Complaint. He asks this Court to order ODOC to remove the grievance restriction, to refrain from transferring him from OSR and to allow him access to a law library for ten hours per week.

Plaintiff is not entitled to injunctive relief absent a showing of a likelihood of success on the merits. *See General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (to obtain a preliminary injunction, a party must establish: (1) "a substantial likelihood of success on the merits," (2) "irreparable harm to the movant if the injunction is denied," (3) "the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party," and (4) "the injunction, if issued, will not adversely affect the public interest"). As set forth above, Plaintiff's conclusory allegations in the Amended Complaint are insufficient to state a plausible claim upon which relief may be granted. Plaintiff has failed to demonstrate a likelihood of success on the merits, and his request for injunctive relief should be denied.

## C. Motions for Inclusion of Evidence and Motions to Compel

In his first Motion for Inclusion of Evidence [Doc. #19], Plaintiff states that he has brought a separate suit against some of the defendants named in this case in the Greer County District Court. He seeks an order from this Court requiring the Clerk of the Greer County District Court to provide this Court with a copy of every document filed in the state case. Plaintiff's Motion to Compel [Doc. #25] seeks the same relief

In his second Motion for Inclusion of Evidence [Doc. #20], Plaintiff asks this Court to issue a Subpoena Duces Tecum to the Clerk of the Oklahoma Court of Criminal Appeals ordering production of a copy of "each document in the case no. PR-2010-952[.]" *See* Doc. #20. Plaintiff seeks the same relief in his second Motion to Compel [Doc. #27].

In essence, Plaintiff seeks writs of mandamus against the two courts. Federal courts, however, have no jurisdiction to issue a writ of mandamus to a state judge or a state court. *See Olson v. Hart*, 965 F.2d 940, 942 (10th Cir. 1992) (*citing Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir. 1986)). It is recommended that these motions be dismissed with prejudice.

In light of the previous recommendations, it is further recommended that Plaintiff's Request for Hearing/Setting of Pending Motions [Doc. #21] and his Motion for Hearing [Doc. #26] be denied.

### D.      Motion for Grand Jury Investigation

In Plaintiff's Application for Grand Jury Investigation [Doc. #28], Plaintiff requests that this Court order a grand jury investigation into the civil rights violations against Plaintiff as alleged in this action, and further that the Court appoint a prosecutor to pursue criminal charges "against any person found to have violated his rights." Plaintiff cites no authority for this Court to take such actions. And, as analyzed *infra*, Plaintiff has failed to set forth in this civil rights action any claims upon which relief may be granted. Plaintiff's application for a grand jury investigation into the allegations of his complaint is devoid of any legal or factual basis and should be denied.

## VI.      Pendent State Law Claims

Plaintiff has invoked the Oklahoma State Constitution in support of his claims for alleged violations of his rights. Pursuant to 28 U.S.C. § 1367(c)(3), the court has discretion to decline to exercise supplemental jurisdiction over a state law claim if the court has

"dismissed all claims over which it has original jurisdiction." *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). As set forth above, it is recommended that Plaintiff's § 1983 claims be dismissed. Therefore, if the Court adopts the recommendation to dismiss all of Plaintiff's federal claims, it is recommended that Plaintiff's state law claims be dismissed without prejudice.

## RECOMMENDATION

It is recommended that Plaintiff's claims be dismissed pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted under federal law. Unless otherwise specified, Plaintiff's claims should be dismissed without prejudice.[13] It is further recommended that this Court exercise its discretion under 28 U.S.C. § 1367(c)(3) and dismiss any remaining claims that are based on state law without prejudice. Given the recommended disposition of this case, it is further recommended that Plaintiff's Motion for Appointment of Counsel [Doc. #16], his Application for Preliminary Injunction [Doc. #7], his two motions for inclusion of evidence [Doc. ## 19, 20], his two motions for hearings [Docs. ##21, 26], his two motions to compel [Docs. #25, 27] and his Application for Grand Jury Investigation [Doc. #28] be denied. The dismissal should be counted as a "strike"

---

[13]Plaintiff's claims against the State of Oklahoma, its agencies, and against individual defendants in their official capacities should be dismissed with prejudice. *See supra* at 8-9. Claims against MACC and OSR should also be dismissed with prejudice. *See supra* at 9-10. Plaintiff's claims based on prison grievance procedures should be dismissed with prejudice, *see supra* at 14-17, as should his claims based on his removal from a voluntary prison program. *See supra* at 17-20.

pursuant to 28 U.S.C. § 1915(g) "from the date when [Plaintiff's] time to file a direct appeal expire[s]" or, if he files a timely direct appeal, "from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if [Plaintiff] files one, or from the date when the time to file a petition for writ of certiorari expire[s], if he d[oes] not." *See Hafed v. Federal Bureau of Prisons*, __ F.3d__, 2010 WL 5300829 at * 2 (10th Cir. Dec. 28, 2010) (for publication).

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by February __14th__, 2011. *See* Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __24th__ day of January, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE